PHILIP J. VANDEGRIFT AND LOTTIE VANDEGRIFT, DE-
FENDANTS IN ERROR, v. WEST JERSEY AND SEA-
SHORE RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued November 29, 1904—Decided March 6, 1905.

1. One of the plaintiffs entered the ferry-house of the Philadelphia
   and Camden Ferry Company at Philadelphia, intending to pur-
   chase a ferry ticket of the company; she had at the time a rail-
   road ticket of the defendant which entitled her to transportation
   from Philadelphia to Woodbury, including the ferriage from Phila-
   delphia to Camden; she was injured in the ferry-house at
   Philadelphia while on her way to the ticket office of the ferry
   company; she used a ferry ticket to pay her fare across the river,
   left the station and went to a point in Camden on a business
   errand, in pursuance of her intention, before the injury was re-
   ceived; she returned to her home by the street railway; the rail-
   road ticket was afterwards used by her husband; she, however,
   testified at the trial that she intended to use the railroad ticket in
   order to cross the ferry. *Held,* that she was not a passenger of
   the railroad company at the time of the injury.
2. The porter, whose negligence is said to have caused the plaintiff's
   injury, testified that he was paid by the check of the defendant,
   but immediately added that he forgot whether it was the railroad
   or not; there was positive testimony, which was sustained by cir-
   cumstances, that he was an employe of the ferry company. *Held,*
   that his testimony that he was paid by the railroad company was
   too uncertain to justify the conclusion that he was an employe of
   the railroad company.

On error to the Supreme Court.

For the plaintiff in error, *Nelson Burr Gaskill* (*Joseph H.
Gaskill* on the brief).

For the defendants in error, *Ralph W. E. Donges* (*John W.
Wescott* on the brief).

The opinion of the court was delivered by

SWAYZE, J.   This is an action by husband and wife for
injuries received by the wife in the ferry-house of the Phila-
delphia and Camden Ferry Company at Philadelphia. The

ferry-house is used both by passengers of the defendant railroad, which has its terminus at Camden, and by passengers of the ferry company. Mrs. Vandegrift was struck by the handle of a broom with which a porter was sweeping the ferry-house, and the injuries for which this suit is brought were the result. She had in her pocket at the time the unused half of an excursion ticket, which entitled her to passage from Philadelphia to Woodbury, which she says she intended to use to cross the ferry. She had in her hand three cents, the price of a ferry ticket, and was on her way to the ticket office of the ferry company for the purpose of buying a ferry ticket when struck. A ferry ticket was bought with her three cents, and used by her for passage over the ferry. After crossing the ferry, she left the ferry-house at Camden and went to a friend's in that city to give a music lesson. She had come from Woodbury to Camden on that day by the street railroad and not by the defendant's road, and she returned in the same way. A few days later her husband found the unused railroad ticket in her pocketbook and used it himself. There was a motion to nonsuit on the grounds "that the plaintiff was not a passenger of the defendant company; that the relation of carrier and passenger did not exist between them, and that there was no intention on the part of the plaintiff to become a passenger of the defendant company on this day and occasion." This motion was denied and the refusal is assigned as error. The trial judge left it to the jury to find whether the plaintiff, Lottie C. Vandegrift, was a passenger of the defendant company or of the ferry company.

In this we think he erred. The only evidence tending to show that she was a passenger of the railroad company was that she had in her pocketbook a railroad ticket entitling her to transportation from Philadelphia to Woodbury, and that at the time of the trial she was able to say that it was her purpose to use it in order to cross the ferry. She did not say, however, that she intended to go to Woodbury by train, and it is evident that she did not intend to do so, but meant to go to the point in Camden to which she actually went, to give a

music lesson. The facts that she had in her hand the exact sum necessary to buy a ferry ticket; that she intended to buy one; that one was bought for her with her consent, almost immediately after she was injured, and that she used it to cross the ferry, negative her statement of her intent at the trial two years afterwards. It is now suggested, although there is no evidence to that effect. that she bought the ferry ticket for the purpose of securing entrance to the ferry-house and railroad station on the Camden side, after her business in that city was done. If that suggestion has any force, in view of the fact that she came and went between Camden and Wood-bury by trolley, it does not suffice to establish the relationship of passenger and carrier between her and the railroad company at the time of the injury. She did not intend to pursue her journey then by rail; she intended at most to go to Woodbury by rail later in the day. The evidence shows that there is a sign on the Camden side of the river, giving notice that if a person using a railroad ticket goes out of the ferry-house at Camden, he must buy a ferry ticket in order to get back. The ferry-house and railroad station at Camden have the same entrance. If Mrs. Vandegrift bought the ferry ticket at Philadelphia, intending to use it for entrance to the ferry-house in Camden, it must have been because she knew of this requirement of the companies. She knew then that by leaving the ferry-house at Camden she would break the continuity of her journey, and could not resume it without the use of another ticket. Under such circumstances, we think the relationship of passenger and carrier did not exist between her and the railroad company until she intended *bona fide* to pursue her journey by rail. If she intended to use the rail-road ticket to pay her fare on the ferry, she also intended to use the ferry ticket later to reimburse the railroad. That would amount to a mere substitution of one method of payment for another—a substitution which seems to have been permitted by the companies—but the payment for her transportation across the ferry by means of a railroad ticket did not make her a passenger of the railroad company when she

did not intend to pursue her journey then by rail. At the time of the injury, she was a passenger of the ferry company, but not of the present defendant. There was error in the refusal to nonsuit.

At the close of the case a somewhat different situation was presented, and the refusal to direct a verdict stands on different grounds. Even if the plaintiff was not its passenger, the defendant is liable if the porter was then its servant. It is therefore necessary to consider the evidence as to who was the employer of the porter. He was at work in the ferry-house of the ferry company. He testified that his uniform had letters on it either "P. & C." or "P. F. C.," initials which probably refer to the ferry company, but obviously do not refer to the railroad company; that he was paid by check which he got from the office of Stewart (superintendent of the ferry company). The examination then proceeded thus:

"Q. Whose check is it?

"A. West Jersey.

"Q. West Jersey and Seashore?

"A. Yes, sir.

"Q. You get paid by the West Jersey and Seashore Railroad Company?

"A. I forget whether it is the West Jersey or not."

On cross-examination he said that he could not be sure whose name was signed to the check.

It was afterwards proved on the part of the defendant that the porter was paid by the Philadelphia and Camden Ferry Company, and that he was in their employ, under the charge and supervision of their superintendent.

In view of this positive testimony and of the porter's acknowledged ignorance as to whose name was signed to the check, we think his statement that he was paid by the West Jersey is entirely too hazy to justify an inference that he was an employe of the defendant.

There should have been an order for nonsuit. For this error the judgment must be reversed and the record remitted for a new trial. It is not necessary to consider the other errors assigned.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, FORT, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN. 12.